## HENRY K. BUEL

v.

## MORRIS SELZ ET AL.

1. EQUITY JURISDICTION IN ACCOUNT.—Where an employe was to be paid his salary in proportion to the profits of the employers, and it appears from the nature and extent of the business done that an account taken within the scope of the agreement for services would be complicated and intricate, and wholly unfit for investigation by a jury, the employe has a right to come into a court of equity and ask that the account may be adjusted under a reference to a master.

2. WAIVER.—The salary was to be adjusted in proportion to the profits of the employers, but there was a guaranty that the employe should receive at least a stated sum yearly, whether warranted by the profits or not. The contract for employment was under seal, and the guaranty of the fixed sum was one of the covenants in the agreement. Held, that the mere fact that the employe received the amount of the sum stated each year, the employers declining to give a statement of profits under the plea that his share of the profits did not amount to that sum, to which he made no reply, does not constitute a waiver on his part to have such accounting.

3. DUTY TO FURNISH STATEMENT—ACCOUNT STATED.—Under such an agreement, it was the duty of the employer to make and deliver to the employe a statement yearly of the business, and if he upon examination admitted its correctness, the balance would then become an account stated and binding upon both parties; or if upon receiving the statement the employe should keep it an unreasonable length of time without making any objection, his silence would be construed into an acquiescence, and he would be equally bound by it as a stated account.

APPEAL from the Superior Court of Cook county; the Hon. S. M. MOORE, Judge, presiding. Opinion filed February 4, 1880.

In November, 1873, the appellees, Selz, Rutter, Meyer and Bunn, being copartners in the business of manufacturing boots and shoes by means of convict labor at Joliet, under the firm name of Morris Selz & Co., and desirous of establishing and carrying on at Chicago a wholesale trade in said goods, entered into a written contract, under seal, with Buel, as party of the first part therein, whereby he agreed to serve said firm as a salesman in their store in Chicago, giving his exclusive atten-

tion to said business, with his utmost skill and ability, for the exclusive benefit of said firm, for four years, from January 1, 1873. For compensation therefor, said firm, as party of the second part, agreed to pay him a sum each year which should be equal to one-fifth of the net profits of the business conducted at that store, guaranteeing that such sum should amount to at least $7,500 each year, to be determined as follows:

" At the end of each year of said period, the gross profits of the business conducted at the Chicago store of said firm shall be ascertained, and from the sum of said gross profits shall be deducted the total expenses and losses incurred in such year in said business, and a sum which shall be equal to one-fifth part of the residue shall be said compensation; and in no case shall said party of the first part receive or draw from the funds of said firm in any one month a sum greater than six hundred and twenty-five dollars ($625), until the expiration of each year, when his total annual compensation shall be determined.

"And said party of the second part further covenant and agree with said party of the first part, that the entire product of the manufactory of said party of the second part at Joliet shall be shipped to and disposed of at their store in Chicago, and that said product shall be invoiced to said store at the rate of ten per cent. above and in addition to the actual cost of the same, on four months' time, with interest at the rate of ten per cent. per annum, to be charged the Chicago house of said firm after the expiration of four months from the date of sale; but interest at the rate of ten per cent. is to be allowed the said Chicago house on all payments made within four months; such cost of said product being determined in the same way and upon the same basis that the cost thereof is determined at the present time."

The agreement provided that Buel should not be a member of the firm. Complainant entered upon the service January 1, 1873, and continued for four years. The defendants carried on a large jobbing business in boots and shoes, which embraced those manufactured at Joliet, and divers quantities purchased in the East, these purchases being made by complainant, who had nothing to do with the books of the concern. He drew

the monthly installments of his compensation, and at the end of the year would call for a statement as to profits, but was always put off by one of the members of the firm, saying there were no profits that would give him anything above the $7,-500.00 per annum. The business was large. There had been no statement as to profits ever delivered to him, or settlement concerning them. Fifteen months after the expiration of his time, Buel filed this bill in the Superior Court for an accounting; but upon the hearing upon pleadings and proofs the court dismissed the bill with costs, and complainant brought the case to this court by appeal, claiming that the decree of dismissal without directing an accounting was erroneous.

Mr. SANFORD B. PERRY, for appellant; as to the jurisdiction of a court of equity in matters of account, cited 1 Story's Eq. Jur. § 450; Post v. Kimberly, 9 Johns, 493; Corp'n of Carlisle v. Wilson, 3 Ves. Jr. 276; Bruce v. Burdette, 1 J. J. Marsh, 82; Watson v. Sutherland, 5 Wall. 78; Hipp v. Babin, 19 How. 278.

If the items of account are numerous, complicated and inconvenient to be taken by a court of law, a court of equity will take jurisdiction: 1 Story's Eq. Jur. § 459a; Kerr v. Steamboat Co. Cheevis' Eq. 194; Dabbs v. Nugent, 14 W. R. 94; Taff Vale Ry. Co. v. Nixon, 1 H. of L. Cas. 111; Hill v. Hibbitt, 27 L. T. Rep. 334; Ludlow v. Simonds, 2 Caine's Cas. 52; Craig v. McKinney, 72 Ill. 305; Far. & Mec. Bank v. Polk, 1 Del. Ch. 175; Taylor v. Tompkins, 2 Heisk. 90; Watt v. Conger, 21 Miss. 421.

The right to an account of profits exists as well where an employe is to be paid in proportion to the profits, as where there is a partnership: Bisset on Partnership, 14; Parsons on Partnership, 77; Hargrave v. Conroy, 19 N. J. Eq. 281; Chapline v. Conant, 3 W. Va. 507; Shepard v. Brown, 4 Giff. 208; Harrington v. Churchward, 8 W. R. 302; Sturtevant v. Goode, 5 Leigh, 83; Dunwidie v. Kerley, 6 J. J. Marsh, 501; Witter v. Arnett, 3 Eng. (Ark.) 58; Garr v. Redman, 6 Cal. 574.

A bill of discovery in aid of a suit at law would not change

the rights of the parties, for when a court of chancery has ob-
tained jurisdiction it retains it for all purposes: 1 Story's Eq.
Jur. § 456; Rathbone v. Warren, 10 Johns, 595; Sherlock v.
Winnetka, 59 Ill. 389.

In this State bills of discovery are dispensed with: Laws of
1861, 69; Laws of 1867, 185.

Complainant is not barred by the Statute of Limitations:
Kane v. Bloodgood, 7 Johns. Ch. 113; Miller v. M'Intyre, 6
Pet. 61; 2 Story's Eq. Jur. § 1520.

The silence of complainant does not create an equitable
estoppel: Preston v. Mann, 25 Conn. 128; Odlin v. Gove, 41
N. H. 473; Traun v. Keiffer, 31 Ala. 144; Taylor v. Ely, 25
Conn. 258; Wheelock v. Hardwick, 48 Vt. 19; Hill v. Epley
31 Pa. St. 331; Plummer v. Mold, 22 Minn. 16; Commonwealth
v. Moltz, 10 Barr, 531; Boggs v. Mining Co. 14 Cal. 368; Zucht-
mann v. Roberts, 109 Mass. 54; Bigelow on Estoppel, 508.

If the element of fraud or injury is wanting, there can be no
estoppel: Flower v. Elwood, 66 Ill. 438; Chandler v. White,
84 Ill. 438; Knoebel v. Keicher, 33 Ill. 308; Davidson v.
Young, 38 Ill. 146; Ball v. Hooten, 85 Ill. 161.

Evidence as to particular items of account is inadmissible on
the original hearing of the right of complainant to an account-
ing: 1 Daniel Ch. Pr. 857; Hudson v. M'f'g Co. 1 C. E. Green,
Ch. 475; Law v. Hunter, 1 Russ. Ch. 102; Gresley's Eq. Ev.
240.

Mr. F. H. KALES, for appellees; that the complainant before
he filed his bill had waived his right to an accounting: cited
Parsons on Partnership, 560; Darthez v. Lee, 2 Y. & C. 5.

Complainant is only entitled to a discovery, not an account-
ing: Berthold v. Goldsmith, 24 How. 536; Hargrave v. Conroy,
4 C. E. Green, 281; Story's Eq. Jur. § 458.

McALLISTER, J.   It is entirely clear, from the nature and
extent of defendant's business that an account taken within
the scope and under the provisions of the agreement between
them and the complainant respecting the services and compen-
sation of the latter during the period of four years, would be

complicated and intricate, and a wholly unfit matter for investigation by a jury, or even a court, without reference to a Master. Patten v. Patten, 75 Ill. 446. Such being the case, we are fully satisfied by examination of the authorities cited by appellant's counsel, that the court of equity had jurisdiction of the case; and that, so far as that question was concerned, the bill was improperly dismissed. Harrington v. Churchward, 6 Jur. N. S. 576; S. C. 8 W. R. 302, was a case where a salary was to be paid to an employe, in proportion to the profits of the employers, and the court held that the question whether the employe had a right to come into a court of equity for an account and payment instead of suing at law, depended upon the circumstance whether the accounts were of a too complicated nature to be gone into by a jury. See, also, Hargrave v. Conroy, 4 C. E. Green, 281; Parsons on Part. p. 77, note, and p. 93.

In Craig v. McKinney, 72 Ill. 312, the court stated the general doctrine thus: "That a court of chancery has jurisdiction in matters of account, cannot be questioned; and while it is not every account which will entitle a court of equity to interfere, and that it must be such an account as cannot be taken justly and fairly in a court of law, we cannot doubt that from the difficulty of investigating the accounts here involved this is a proper case for chancery."

But we do not understand the counsel for appellees as denying the jurisdiction of the court; but he insists that complainant had, previously to filing his bill, waived his right to a discovery or accounting, if he had any. This position however is unsupported by the evidence in the case. The right of a party to an accounting and payment, if it once exists, is substantially a right of action, and the matters out of which it arises a cause of action.

If the accounting party has made, or has caused to be made, a statement of the account, and delivered it to the other party in due form, he to whom it was rendered is bound to examine it, or procure some one to examine it for him; and if he ad· mits the account to be correct, it becomes a stated account, and is binding upon both parties—the balance being the debt which

may be sued for and recovered at law upon the basis of an *insimul computassent*.   So if, instead of an express admission of the correctness of the account, the party receiving it keeps the same by him and makes no objection in a reasonable time, he will be considered from his silence as acquiescing, and be equally bound by it as a stated account.   Phillips v. Belden, 2 Edw. Ch. 1.

Under the contract in this case, the amount which might be due and payable to appellant beyond the $7,500, was a proportionate share of the profits of the business of appellees, to be determined upon a specified basis.   That amount could not be ascertained except by a just and true accounting.   The means by which such accounting alone could be made were wholly within the knowledge and under the control of appellees. From these circumstances there arose and attached to appellees an equitable duty to render to appellant at the end of each year a just and true account of their business, showing the extent of their profits according to the provisions of their agreement with appellant.   If that had been done, appellant would have been under the reciprocal duty to examine such statement within a reasonable time after its delivery to him, and if he found grounds of objection to state them; if not, to approve the account.   If appellees had made such statements of account and delivered them at the end of each year respectively to appellant, and he had approved them, or kept them beyond a reasonable time without objection, then appellees would thereby become, *prima facie*, at least, discharged from the duty of accounting; and if the accounts so rendered and acquiesced in showed anything due to appellant, then appellees would have been subject to an absolute legal liability, and equity would have no jurisdiction except upon the ground of fraud, accident, or mistake.

Now, the only basis in fact for the claim by appellee's counsel that appellant is cut off from his right to an accounting by waiver of the performance of the duty to account on the part of appellees, is that at the end of each year, when he was about receiving the last installment of the $7,500, appellant would suggest to one of the appellees that he thought one-fifth of the

net profits would entitle him to more than the $7,500 per year; to which he would be answered that such one-fifth would not amount to that sum, and appellant would take his balance and remain silent.

Such a verbal statement as to the profits, even if expressly assented to, would not be equivalent to a stated account. To amount to that, in the sense of a court of equity, the account rendered must be in writing. " A man who pleads a stated account must show it was in writing, and likewise the balance in writing, or at least set forth what the balance was." Lord Hardwicke, in Burk v. Brown, 3 Atkin, 399; Story's Eq. Pl. Sec. 798; 1 Eq. Jur. Sec. 526. There was nothing that amounted to a stated account.

But let us examine this alleged discharge by waiver a little further. What is it? What is the principle upon which it rests? It is undeniable that appellees covenanted to pay appellant an annual salary which should be equal to one-fifth of the annual net profits, but guarantied him $7,500, at all events. Then, if the one-fifth net profits exceeded the $7,500, that excess they covenanted to pay. But that sum could never be ascertained without an accounting; and for that appellees had the means exclusively in their own hands. That accounting was an indispensable prerequisite to the ascertainment of what amount, if any, was due, and was therefore indispensable before payment. It would seem from this view, that whatever would dispense with the duty of accounting, short of its performance, would likewise dispense with that of payment. Why, then, would it not follow that an act on the part of appellant which would dispense with the performance of the duty of accounting, must necessarily be of the same legal efficacy as one which would discharge them from the terms of payment of the excess over the $7,500 provided by their covenant? From these terms they could only be discharged by technical release, accord and satisfaction, or something of the same legal effect. Clearly, the silence of appellant regarding a mere verbal statement as to the net profits could have no such effect. It does not amount to an estoppel, because appellees in no respect altered their position in consequence. It

cannot constitute an accord and satisfaction, because appellant received nothing but what was his just due, and which appellees were legally bound to pay. And if, upon receiving the balance of the $7,500 at the end of each year, appellant had agreed by parol, in consideration thereof, to release appellees from any further claim on account of net profits, still, that would have been unavailing: 1. Because there was no sufficient consideration. 2. Because a sum proportionate to one-fifth of the net profits was provided for by covenant, under seal, and could not be released by parol.

Again, it is claimed by appellees that there was a settlement; and in proof of it they introduce a receipt dated January 31, 1873, whereby appellant acknowledged that he had received from Morris Selz & Co. one hundred dollars in full of all demands. Being only a receipt, it was subject to explanation, and was shown to relate to a specific matter wholly outside the transactions in question, viz: to a month's service after the time under his written contract had expired, and performed for other parties.

A settlement of account means a general settlement of every pending transaction. A settlement of a portion of accounts is not in this sense a settled account. Upon the whole case, we think the court should have entered an interlocutory decree for an accounting and a reference to the master to take and state the account, and that the decree dismissing plaintiff's bill for want of equity was erroneous; for that reason it will be reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

Reversed and remanded.